UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SUE L. KING, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Civil Action No.  SA-12-CV-592-XR |
| | § | |
| HSBC BANK USA, N.A., as Trustee for | § | |
| Wells Fargo Home Equity Trust 2004-2, and | § | |
| WELLS FARGO BANK, N.A. | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered Plaintiff's Motion for TRO, Preliminary and Permanent Injunction (docket no. 11).  The motion is opposed.  After careful consideration, the Court denies the motion.

**Background**

Plaintiff filed an "Application [for] TRO, Temporary Injunction, Permanent Injunction and Plaintiff's Original Petition" in state district court on June 4, 2012.  The petition alleged that Plaintiff is the record owner of property located at 10930 Hollow Ridge, Helotes, Texas; that HSBC is the alleged holder of a mortgage note payable by Plaintiff; that Defendant has declared the note accelerated and seeks a nonjudicial foreclosure; and that "there are impediments to the sale and accounting relating to the amounts owed or reinstatement amounts"; these impediments "can be those which would or should prevent foreclosure of the home" and "result from the actions or inactions of Mortgagee, its agents, servants, employees or authorized representatives"; "Plaintiff was offered an opportunity for mortgage modification and Plaintiff has not had enough time to respond" and "is

1

exploring other options under state and federal law to which she may be entitled in order to reform, modify, or qualify for alternative programs designed to aid the plaintiff on a temporary basis including Federal HASP (Homeowner Affordability and Stability Plan) and MHA (Making Home Affordable)"; Plaintiff "would need to ascertain compliance by Defendant with these Federal enacted legislation [*sic*] which can not be done without discovery."

Plaintiff asserts causes of action for (1) breach of contract; (2) violation of sections 51.002, 51.0074, and/or 51.0075 of the Texas Property Code[1]; (3) violations of the Texas Debt Collection Practices Act[2]; (4) trespass to try title; and (5) reformation. Plaintiff seeks damages and injunctive relief preventing foreclosure.

─────────────────

[1] Section 51.002 establishes provisions governing the sale of real property under a contract lien, including the time and date of the sale and the notice required for such sale. Section 51.0074 is entitled "duties of trustee" and provides that "(a) One or more persons may be authorized to exercise the power of sale under a security instrument; (b) A trustee may not be: (1) assigned a duty under a security instrument other than to exercise the power of sale in accordance with the terms of the security instrument; or (2) held to the obligations of a fiduciary of the mortgagor or mortgagee." Section 51.0075 is entitled "authority of trustee or substitute trustee" and provides that "A trustee or substitute trustee may set reasonable conditions for conducting the public sale if the conditions are announced before bidding is opened for the first sale of the day held by the trustee or substitute trustee." It also governs who many appoint a substitute trustee, provides that the name and a street address for a trustee must be disclosed on the notice required by § 51.002(b), and provides that the substitute trustee shall disburse proceeds as provided by law. Plaintiff alleges no facts specific to any of these provisions. Nor are there any factual allegations that the substitute trustees violated any of their duties under the Property Code.

[2] The petition cites sections 392.301(b)(3), 392.301(a)(8), 392.303(b), and 392.304(8)(j) of the Texas Finance Code. Section 392.301(b)(3) states that the Act *does not* prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Section 392.301(a)(8) provides that "[i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices . . . (8) threatening to take an action prohibited by law." Section 392.303(b) provides, "(b) Notwithstanding Subsection (a)(2), a creditor may charge a reasonable reinstatement fee as consideration for renewal of a real property loan or contract of sale, after default, if the additional fee is included in a written contract executed at the time of renewal." And section 392.304(8)(j) does not exist.

2

The state district court issued a TRO on June 4 and set a hearing on the temporary injunction application for June 18.  Defendants filed an answer on June 13, 2012.  Defendants removed the case to this Court on June 15, alleging diversity jurisdiction.  The Notice of Removal alleges the following facts in support of diversity jurisdiction: (1) Plaintiff is a citizen of Texas; (2) Defendant HSBC is a citizen of New York; (3) Defendant Wells Fargo is a citizen of South Dakota; (4) to the extent the petition names the Substitute Trustees, they are improperly joined; (5) the tax appraised value of the property for 2012 as shown by the Bexar County tax rolls is $262,262.00.[3]

On July 10, Defendants filed a "Motion to Dismiss Pursuant to Rule 12(b)(6)."[4]  In response, Plaintiff sought an extension of time to respond to the motion, stating that she wished to move to remand and should not be required to respond to the motion to dismiss until jurisdiction was determined.  The Court granted the motion, giving Plaintiff until July 23 to filed a motion to remand and extended the time for responding to the motion to dismiss until two weeks after the motion to remand was ruled upon.

Plaintiff filed a motion to remand on July 23, arguing that this Court lacks diversity jurisdiction because her equity in the property is not more than $48,252.00.  The next day, July 24, the Court entered a text order denying the motion to remand, noting that the measure of the amount in controversy in this case, which asserts a claim for trespass to try title and injuctive relief preventing foreclosure, is the value of the property.  Because the value of property far exceeds $75,000, the

---

[3] The Court can and does take judicial notice of this fact.

[4] Since Defendants had answered, the proper vehicle for asserting that Plaintiff's petition fails to state a claim is Rule 12(c).  Because the standard for determining motions under 12(b)(6) and 12(c) is the same, the Court converts such motions to Rule 12(c) motions.

requisite amount in controversy exists.[5]  Plaintiff's response to the motion to dismiss is therefore due August 7.

On August 2, Plaintiff filed the instant opposed motion for temporary restraining order, preliminary injunction, and permanent injunction seeking to stop a foreclosure sale scheduled for August 7.  The motion indicates that Plaintiff is unaware that the motion to remand has been denied.

## Analysis

Plaintiff's request for emergency relief seeks to enjoin Defendants from foreclosing on the property while this case is pending.   Under well-settled Fifth Circuit precedent, a preliminary injunction is an extraordinary remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest.[6] *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir.1985).

Thus, to determine whether Plaintiff has a likelihood of success on the merits, the Court looks

---

[5] Plaintiff did not assert that the substitute trustees were parties whose presence would affect diversity jurisdiction.  This Court has previously held that claims asserted against a substitute trustee in order to prevent foreclosure by injunctive relief do not affect diversity jurisdiction, because the substitute trustee in that situation is only a nominal party.  As noted, Plaintiff has not alleged any facts or claims demonstrating that Plaintiff is asserting any claim directly against the substitute trustee(s) for violations of the Property Code or otherwise.

[6] The factors that govern an application for a temporary restraining order are the same as those that govern a request for preliminary injunction.  *Hill v. Green County School Dist.*, 848 F. Supp. 697, 703 (S.D. Miss. 1994).

to the claims asserted in the petition, as supplemented by the motion.  Although Plaintiff asserts a number of causes of action in her state court petition, as pointed out by Defendants in the motion to dismiss, it lacks the factual support needed to raise the right to relief to a plausible level.  Plaintiff asserts a claim for breach of contract, but fails to allege facts establishing a contract or the breach thereof.  As noted, Plaintiff cites violations of three Texas Property Code provisions, but fails to allege facts establishing that any of these provisions was violated.  Plaintiff asserts violations of the Texas Debt Collection Practices Act, but fails to allege any facts to support such violations.  Further, Plaintiff fails to allege any facts that would support a claim for trespass to try title or "reformation."

Turning to the motion for preliminary injunction, Plaintiff states the following: (1) her home was noticed for foreclosure on July 9, setting the foreclosure on August 7; (2) Defendants filed a 12(b) motion that may effectively deny Plaintiff the discovery that she needs in order to further amend her pleadings with the necessary factual specificity; (3) counsel contacted counsel for Defendants and requested that they voluntarily stay the foreclosure because the motion to dismiss and motion to remand remained pending (though the motion to remand has been denied); (4) counsel files this application to maintain the status quo until a formal hearing can be held; (5) HSBC is the alleged holder of the mortgage note and Wells Fargo Bank is the mortgage servicer; (6) Plaintiff purchased the property in 2004 and Wells Fargo induced and set up Plaintiff on two loans, the first lien with Wells Fargo in the amount of $188,000 and a second lien in the amount of $47,000 with Option One Mortgage Corporation (an 80/20 loan); (7) Defendants agreed to submit themselves to "Federal Law and Regulations under The Making Home Affordable Program"; (8) Plaintiff is covered under HAMP and "meets the criterion for genuine fair substantive and procedural due process considerations by the Defendants [who] were participants in the HAMP program as servicers"; (9) HAMP and other programs are supposed to provide the borrower with fair consideration of their applications for loan

reformation and modification and sets out time lines and procedures for acceptance and consideration so the homeowner won't get further behind; (10) if a homeowner under MHA rules is found not to be eligible, the homeowner "must be provided for alternatives which was not adequately done in this case"; (11) because the administration of HAMP discretion has been delegated to the Banks who agree with the federal government to be bound by its rules, purposes and guidelines, the Banks are "acting under color of law and subject [to] due process standards under the 5th Amendment of the U.S. Constitution and breach their contract with Plaintiff to do the same or misrepresented that it would provide fair consideration and due process"; (12) Plaintiff fell behind on her mortgage in late 2008 due to the economic recession; (13) Plaintiff has recovered sufficiently to make her payments but will need a modification or reformation of her loan "which was fully and finally denied her in December 2011"; (14) before that time, Defendants did provide temporary reduction of payment plans but they were not in the amounts requested and essentially did not meet Plaintiff's circumstances; (15) Plaintiff has equity in her home that she will likely lose at a foreclosure auction and she should get an equitable opportunity to sell her home and recover her equity; (16) Defendants did not give Plaintiff genuine consideration for a loan modification; (17) Defendants accept money through fees paid by Plaintiff and/or the United States for "good faith and genuine compliance with mortgage home loan modification applications within three months of submittance" but did not comply with "all considerations and time lines"; (18) Defendants violated the Fifth and Fourteenth Amendments (due process/equal protection) and have failed to live up to the rules by the Treasury Department under HAMP with regard to Plaintiff's mortgage note.  Plaintiff further states she is in the process of preparing a motion for leave to amend her complaint.

Based on the motion for injunction, it appears that Plaintiff is asserting either a private cause of action under HAMP/MHA or claims as a third-party beneficiary of Defendants' contract to

participate in HAMP.[7]  However, courts have routinely rejected such claims.  *See Miller v. Chase Home Finance, LLC*, 677 F.3d 1113 (11th Cir. 2012) (concluding that no private right of action exists under HAMP); *Denley v. Vericrest Financial, Inc.*, Civ. A. No. H-12-992, 2012 WL 2368325, at *2 (S.D. Tex. June 21, 2012) ("While the goal of HAMP is to facilitate relief for homeowners, HAMP does not confer upon mortgagors a private right of action."); *Easley v. Fed. Nat'l Mortgage Ass'n*, Civ. A. No. 4:10-CV-3734, 2011 WL 6002644 (S.D. Tex. Nov. 30, 2011);   *Mortberg v. Litton Loan Servicing, L.P.*, No. 4:10-CV-667, 2011 WL 4421946 (E.D. Tex. Aug. 30, 2011) (dismissing plaintiff's claims for negligence because no private right of action for borrowers exists under HAMP); *Cade v. BAC HomeLoans Serv., LP*, No. H–10–4224, 2011 WL 2470733, at *2 (S.D. Tex. June 20, 2011) (declining to find a private right of action under HAMP and observing that the majority of courts have "declined to find a private right, and further rejected the theory that borrowers are intended third-party beneficiaries of the HAMP Servicer Participation Agreement"); *Akintunji v. Chase Home Finance L.L.C.*, No. H–11–389, 2011 WL 2470709, at *4 (S.D. Tex. June 20, 2011) ("There is no private cause of action under HAMP."); *Singh v. Wells Fargo Bank*, No. 1:10–CV–1659 AWI SMS, 2011 WL 66167, at *7 (E.D. Cal. Jan.7, 2011) ("[I]t is well established that there is no private cause of action under HAMP."); *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp .2d 741, 748 (E.D. Mich. 2010) (noting that there is no express or implied right to sue fund recipients under HAMP

---

[7] As explained by the Ninth Circuit in *Nevada v. Bank of America Corp.*, 672 F.3d 661, 665 n.1 (9th Cir. 2012):

> The Home Affordable Mortgage Program ("HAMP"), 12 U.S.C. § 5219a, is a federal program whereby the United States government privately contracts with banks to provide incentives to enter into residential mortgage modifications. "In March 2009, the United States Department of Treasury announced the details of the Home Affordable Modification Program as part of the Making Home Affordable Program. Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives."

because HAMP does not create a private right of action); *Zeller v. Aurora Loan Servs ., LLC*, No. 3:10cv00044, 2010 WL 3219134, at *1 (W.D. Va. Aug.10, 2010) (determining that HAMP does not create a private right of action for a borrower to recover for an alleged breach of a loan modification); *Wright v. Bank of Am., N.A.*, No. CV10–01723 JF (HRL), 2010 WL 2889117, at *4 (N.D. Cal. July 22, 2010) (stating that it is "obvious that [HAMP] does not secure an enforceable right for [borrowers]"); *Hoffman v. Bank of Am., N.A.*, No. C10–2171 SI, 2010 WL 2635773, at *5 (N.D. Cal. June 30, 2010) ("Lenders are not required to make loan modifications for borrowers that qualify under HAMP nor does the servicer's agreement confer an enforceable right on the borrower."); *Simon v. Bank of Am., N.A.*, No. 10-cv-00300-GMN-GRL, 2010 WL 2609436, at *10 (D. Nev. June 23, 2010) ("Other courts have consistently held that the [HAMP] does not provide borrowers with a private cause of action against lenders."); *Marks v. Bank of Am., N.A.*, No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *4 (D. Ariz. June 22, 2010) ("Allowing such a large number of potential plaintiffs [by conferring third-party beneficiary status under HAMP] clearly contravenes the purpose of the HAMP as an administrative tool to effectuate the goals of the EESA."). *Cf. Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) (recognizing that HAMP does not create a private right of action but does not preempt appropriate claims under state law). Plaintiff does not allege that Defendants breached any obligations other than their obligations under HAMP/MHA or that any terms of HAMP were incorporated into a contract between Plaintiff and Defendants.

Plaintiff's claims under the Fifth and Fourteenth Amendments also fail because Defendants are private actors, not government actors. The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the government from depriving persons of "life, liberty, or property, without due process of law." U.S. Const. amend. V.  "In order to apply the proscriptions of the Fifth Amendment to private actors there must exist a sufficiently close nexus between the

government and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the government itself." *Rank v. Nimmo*, 677 F.2d 692, 701 (9th Cir. 1982). Similarly, the Fourteenth Amendment requires state action.

Plaintiff's attempt to classify Defendants as government actors because of their participation in HAMP fails. In analyzing the definition of "federal agency" under the Federal Tort Claims Act, the Supreme Court admonished that although "[b]illions of dollars of federal money are spent each year on projects performed by people and institutions which contract with the Government" and "the Government may fix specific and precise conditions to implement federal objectives," such contracts and regulations do not transform private actors into federal agencies. *United States v. Orleans*, 425 U.S. 807, 815-16, 96 S.Ct. 1971, 1976-77, 48 L.Ed.2d 390 (1976); *see also Dwyer v. Fidelity Nat'l Prop. & Cas. Co.*, 565 F.3d 284 (5th Cir. 2009) (fact that Fidelity served as a fiscal agent and a participant in a heavily regulated federal program did not transform Fidelity into a federal agency under the EAJA). Other courts have rejected due process claims based on HAMP participation because of the lack of a sufficient nexus. *Neal v. E-Trade Bank*, Civ. A. No. S-11-0954, 2011 WL 3813158, at *3 (E.D. Cal. Aug. 26, 2011) ("[P]laintiffs' attempt to bootstrap HAMP to a procedural due process claim asserted against exclusively private entities is ineffectual. . . . The mere existence of a regulatory scheme which these private defendants must comply with cannot convert them into [government] actors. Such an analysis is inimical to the Due Process Clause."); *Sparks v. Federal Nat'l Mortg. Ass'n*, Civ. A. No. 10-13241, 2011 WL 1118719 (E.D. Mich. March 24, 2011) (rejecting Fourteenth Amendment claim premised on HAMP because Defendants were not state actors). Plaintiff's equal protection claim also fails because Defendants are not government actors.

In addition, some courts have held that due process claims premised on HAMP must fail because HAMP does not provide a constitutionally protected property interest. *E.g., Rosas v. Carengie*

9

*Mortg.*, Civ. A. No. 11-7692, docket no. 134 at 11 ("This Court and several other district courts in this circuit have held that 'HAMP does not provide Plaintiffs with a 'protected property interest,' the denial of which must comport with due process.'"); *Ozogu v. CitiMortgage, Inc.*, Civ. A. No. 10-9687, 2011 WL 2940391, at *6 (C.D. Cal. July 19, 2011) ("The Court is persuaded by the decisions of several district courts in this circuit which have held that "'HAMP does not provide Plaintiffs with a 'protected property interest,' the denial of which must comport with due process.'"). Similarly, Plaintiff's equal protection claim fails because there is no allegation that Plaintiff is being treated differently than other similarly situated individuals.

**Conclusion**

After reviewing the petition and the motion for injunctive relief, the Court concludes that Plaintiff fails to state a claim for relief and fails to demonstrate a likelihood of success on the merits (or even a probable right to recovery) that would entitle her to injunctive relief.

Accordingly, Defendants' motion to dismiss (docket no. 4) is GRANTED but with leave to amend. Plaintiff's motion for temporary restraining order, preliminary injunction, and permanent injunction (docket no. 11) is DENIED. Plaintiff shall file an Amended Complaint no later than **August 15, 2012**. Failure to do so will result in dismissal of this action.

It is so ORDERED.

SIGNED this 3rd day of August, 2012.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE